UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BRETT N. COE,

    Plaintiff,

v.                                            Case No. 2:16cv365

CFRA, LLC,

    Defendant.

## REPORT AND RECOMMENDATION

Before the Court is Defendant CFRA, LLC's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and accompanying memorandum. ECF Nos. 10-11. Plaintiff Brett N. Coe filed a Response in Opposition, ECF No. 12, and Defendant filed a Reply to Plaintiff's Response. ECF No. 13. This matter was referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to a Referral Order from the Chief United States District Judge. ECF No. 14; *see also* 28 U.S.C. §§ 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72. After reviewing the briefs, the undersigned disposes of the Motion on the papers without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** and that the Complaint be **DISMISSED WITHOUT PREJUDICE.**

### I. BACKGROUND

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is required to "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's

favor, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Those allegations include the following. Defendant is a franchisee of IHOP and owns and operates several IHOP restaurants in and around Virginia and North Carolina, including an IHOP restaurant located on First Colonial Road within the City of Virginia Beach. ECF No. 1 at ¶ 11. On February 16, 2016, Defendant hired Plaintiff, an African-American male, to work as an assistant manager at the First Colonial restaurant. *Id.* at ¶ 13, 18. That restaurant was managed by Richard Sanders, a white male. *Id.* at ¶ 16. Plaintiff suffers from a chronic "foot drop" in his left leg that requires him to wear a visible leg brace on his lower left leg so that his left foot will not drag when he walks. *Id.* at ¶ 18. Plaintiff walks with a limp and sometimes slightly slower than average. *Id.* at ¶ 19. At all relevant times Plaintiff was able to perform the essential functions of his assistant manager position. *Id.* On February 21, 2016, Plaintiff slipped and fell in front of Sanders. *Id.* at ¶ 20. Ten days later, on March 2, 2016, Sanders told Plaintiff, "I know you have a bad leg, but you have to pick up the pace." *Id.* at ¶ 21.

On March 6, 2016, a white female server told Sanders that she thought Plaintiff "may have" taken a credit card receipt from a table. *Id.* at ¶ 23. Sanders sided with the server and "accused Plaintiff of removing the receipt." *Id.* at ¶ 24. Sanders "made this accusation against Plaintiff in front of restaurant customers and other employees in the dining area, ..." *Id.* When Plaintiff attempted to respond, Sanders instructed him to "carry [his] ass to the back." *Id.* at ¶ 25. When Plaintiff protested the manner in which Sanders spoke to him, Sanders responded: "how about this, I'm firing your ass, how do you like that?" *Id.* at ¶ 26.

On June 27, 2016, Plaintiff filed a complaint against IHOP Restaurants, LLC, and CFRA, LLC, wherein he alleged five counts: (1) discrimination based on disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; (2) discrimination based on perceived

disability under the ADA; (3) racial discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; (4) intentional infliction of emotional distress; and (5) defamation *per se*. *Id.* Specifically, in Count 1, Plaintiff pled that Defendant violated the ADA for "treating [him] in a different manner because of his disability and terminating him because of his disability." *Id.* at ¶ 36. Plaintiff alleged in Count 2 that Defendant terminated him based on the manager's "perception Plaintiff suffered from a disability, and for reasons arising from discrimination against Plaintiff on account of that perception." *Id.* at ¶ 40. Plaintiff pled in Count 3 that Defendant is liable under Title VII because he was "treat[ed]...in a different and unfavorable manner because of his race and [was terminated] because of his race." *Id.* at ¶ 50. In Count 4, Plaintiff stated Defendant was liable for intentional infliction of emotional distress because Mr. Sanders "loudly" made "accusations and derogatory comments toward Plaintiff in the public area of the Restaurant in the presence of customers and other employees." *Id.* at ¶ 54. Lastly, Plaintiff pled in Count 5 that Defendant is liable for defamation *per se* because Sanders made "false and defamatory statements...that [Plaintiff] had improperly taken a credit card receipt from a table, with the implication being that Plaintiff had taken such receipt for a fraudulent or criminal purpose." *Id.* at ¶ 58. Furthermore, Plaintiff alleged the statements "imputed unfitness on the part of Plaintiff to perform the duties of his job and/or lack of integrity in the performance of those duties and/or prejudiced the Plaintiff in his...profession or trade...and implied that Plaintiff was attempting the commission of a crime involving moral turpitude." *Id.* at ¶ 59. Plaintiff contended the statements were published by making them in front of customers and other employees, and that neither the setting nor the context was privileged. *Id.* at ¶¶ 60-61.

On August 19, 2016, Plaintiff filed a Notice of Voluntary Dismissal, ECF No. 9, to

dismiss IHOP Restaurants, LLC, from the case. On that same day Defendant filed a Motion to Dismiss for Failure to State a Claim and accompanying memorandum, ECF Nos. 10-11. Plaintiff filed a memorandum in opposition to Defendant's Motion to Dismiss, ECF No. 12. In his opposition memorandum, Plaintiff withdrew Count 4, his intentional infliction of emotional distress claim. *Id.* at 10. Defendant filed a reply, ECF No. 13. Therefore, this matter is ripe for recommended disposition.

## II. STANDARD OF REVIEW

A motion filed under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006). In considering this motion the Court must assume that the facts alleged are true, and view them in the light most favorable to the plaintiff. *Eastern Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Rule 8(a) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro 8(a). To be sufficient under Rule 8, the pleading must meet two basic requirements: it must contain sufficient factual allegations and those allegations must be plausible. *Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826, 829 (E.D. Va. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). First, sufficient factual allegations include "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do;" rather, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Second, to "nudge[] their claims across the line from conceivable to plausible," *id.* at 570, "plaintiff[s] [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. Indeed,

to achieve factual plausibility, plaintiffs must allege more than "naked assertions ... without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.*

Consequently, when considering a motion to dismiss, only those allegations which are factually plausible are "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (noting that legal conclusions must be supported by factual allegations). In other words, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

### III. ANALYSIS

**A.  Defendant's Status as an Employer under the ADA and Title VII.**

Defendant first argued that Plaintiff's ADA and Title VII claims must be dismissed because Plaintiff insufficiently pled that Defendant met the definition of "employer" under the statutes, relying on *Leuenberger v. Spicer*, No. 5:15-cv-00036, 2016 WL 35590, at * 10 (W.D. Va. Jan. 28, 2016) (granting Defendant's Motion to Dismiss with leave to amend where the plaintiff failed to allege the requisite number of employees under Title VII). ECF No. 11 at 5-6. The ADA and Title VII only apply to employers who employ fifteen or more full-time employees for at least twenty weeks per year. Specifically, under Title VII, an employer is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar

year." 42 U.S.C. § 2000e(b). Under the ADA, an employer is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A). In this case, Plaintiff pled that "CFRA is a franchisee of IHOP's and owns and/or operates, upon information and belief, several IHOP restaurants in and around Virginia and North Carolina." ECF No. 1 at ¶11. In his Complaint Plaintiff did not articulate specifically that CFRA employs the requisite number of full-time employees.

After the Circuit Courts were divided on whether the fifteen employee threshold requirement was a jurisdictional prerequisite to asserting an ADA or Title VII claim, or an element of those claims, the United States Supreme Court decided *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006), holding that employer status for purposes of Title VII liability related to the substantive adequacy of the claim and not to jurisdiction. Hence, to articulate a claim under Title VII and the ADA, a plaintiff must prove that the employer meets the threshold requirement of employing fifteen employees for at least twenty weeks per year. This issue generally comes to the fore when there is some doubt as to whether the employer actually employs fifteen full-time employees. *See, e.g., Leuenberger; Dean v. Am. Fed'n of Gov't Employees Local 476*, 402 F. Supp. 2d 107, 110–11 (D.D.C. 2005). Here, Plaintiff alleges that Defendant operates "several IHOP restaurants in and around Virginia and North Carolina." ECF No. 1 at 11. The Court could draw the reasonable inference from Plaintiff's allegation that CFRA in fact employs more than fifteen full time employees since more than that would be necessary to operate "several" restaurants across two states. Defendant does not contend that it employs less than fifteen employees in total in its various restaurants. Nonetheless, in light of the undersigned's recommendation that the Complaint be dismissed without prejudice on other grounds, but that

Plaintiff be granted leave to amend, any pleading shortcoming regarding Defendant's status as an employer under the ADA and Title VII can be remedied easily in an amended complaint, and the instant Complaint should not be dismissed on the basis that Plaintiff failed to specifically plead the fifteen employee threshold prerequisite.

### B.     Americans with Disabilities Act Claim

Under the ADA, to state a valid wrongful termination claim a plaintiff must demonstrate that (1) he "was a qualified individual with a disability"; (2) he "was discharged"; (3) he "was fulfilling h[is] employer's legitimate expectations at the time of discharge"; and (4) "the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004) (internal quotation marks omitted). In evaluating the Plaintiff's claim for wrongful discharge under the ADA, the Court first determines if the Plaintiff qualifies as a member of the ADA's protected class, i.e., whether he is a qualified individual with a disability. *See id.* at 272. The Plaintiff can do so by demonstrating "evidence that [he] is ... disabled," through "'(A) a physical or mental impairment that substantially limits one or more ... major life activities ...; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Reynolds v. Am. Na'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (citing 42 U.S.C. § 12101(2)).

Plaintiff asserted in separate counts a claim for wrongful termination under the ADA based on both having a physical impairment (Count 1) and being perceived as having a physical impairment (Count 2). Ordinarily these alternatives are merely separate ways to establish whether a plaintiff is a qualified individual with a disability, and thus covered under the ADA, and not separate alternative causes of action. Regardless, Defendant argued that both counts should be dismissed because Plaintiff insufficiently alleged that he is a qualified individual with

7

a disability. ECF No. 11 at 7-12. Specifically, Defendant argued that Plaintiff's allegation that he limped and walked slowly was an insufficient limitation to constitute a disability under the ADA. *Id.* at 8-9. Moreover, Defendant argued that Plaintiff's allegation that Sanders acknowledged Plaintiff's "bad leg" and told him to "pick up the pace" is insufficient to permit the Court to draw the inference that Defendant perceived Plaintiff to have a disability. *Id.* at 10-12. Defendant argued alternatively that Plaintiff failed to allege sufficiently that he was fulfilling his employer's expectations at the time of his discharge or that the circumstances of his discharge give rise to a reasonable inference of unlawful discrimination. *Id.* at 12-13. Plaintiff responded that his allegations regarding his drop foot and the limitations it presented regarding the major life activity of walking were sufficient to qualify him under the ADA as an individual with a disability. ECF No. 12 at 4-5. Plaintiff also contended that Sanders' comments to him about his leg and his need to "pick up the pace" also permitted the inference that Defendant perceived Plaintiff as having a disability. *Id.* at 6-7. The Court will address each argument in turn.

First, as noted *supra*, to sufficiently plead that he qualified as an individual with a disability, Plaintiff was required to allege facts permitting the Court to draw the reasonable inference that he either suffers from a physical impairment that substantially limits the major life activity of walking, or that he is perceived as being so impaired. *Reynolds*, 701 F.3d at 150. Contrary to Defendant's argument, the extent of Plaintiff's limitation may be a disputed fact which ought not to be resolved by a 12(b)(6) motion. Plaintiff has asserted that he suffers from a drop foot, that he is required to wear a leg brace to prevent his foot from dragging on the ground, and that he limps and walks with a slow gait. These facts permit the reasonable inference that the major life activity, walking, is substantially limited. It is not for the Court at this stage of the

proceedings to determine as a matter of law that an individual suffering from a drop foot does not suffer a sever impairment under the ADA as a matter of law. As the Fourth Circuit has recognized, "Congress instructed that the term 'substantially limits' be interpreted consistently with the liberalized purposes" of the ADA, and that the EEOC regulations clarified that "the term 'substantially limits' shall be construed broadly in favor of expansive coverage' and that the term is 'not meant to be a demanding standard.'" *Summers v. Altarum Institute, Corp.*, 740 F.3d 325, 329 (4th Cir. 2014). In light of this standard, Plaintiff has sufficiently pled that he is a qualified individual under the ADA.[1]

Moreover, Plaintiff has sufficiently pled that he was perceived by his employer as having a disability. The Fourth Circuit has explained what it means to be perceived as having a disability:

> One may be "regarded as" disabled under the ADA if either "(1) a covered entity mistakenly believes that [one] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

*Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 703 (4th Cir. 2001). According to the Complaint, Plaintiff's leg brace was visible and he walked with a limp and a slow gait. Sanders, the manager of the restaurant where Plaintiff worked, observed Plaintiff take a fall, and shortly thereafter acknowledged that Plaintiff had "a bad leg," but that despite this he would need to "pick up the pace." From these facts the Court may draw the reasonable inference that Sanders observed Plaintiff's leg brace and his limitations in walking, including a resulting fall, and attributed them to his "bad leg." These facts and inferences are sufficient to state a plausible

---

[1] The cases cited and relied on by Defendant, ECF No. 11 at 8-9, are inapposite, as they are all summary judgment decisions where the extent of the ADA plaintiffs' impairment were fleshed out material facts which the courts found were not in dispute.

9

claim that the employer either mistakenly believed Plaintiff had a physical impairment which substantially limited his ability to walk, or mistakenly believed that Plaintiff's nonlimiting impairment substantially limited his ability to walk. Either inference supports the plausible claim that Plaintiff was perceived by his employer to have such impairment.

Where Plaintiff's allegations fall short, and do not rise to the level of plausibility, are his failure to assert facts supporting the proposition that he was meeting his employer's expectations at the time of his discharge, and that the circumstances of his discharge raise the reasonable inference of unlawful discrimination. *Rohan*, 375 F.3d at 273 n.9. First, the only allegation in the Complaint regarding Plaintiff's performance of his duties is his claim that "he was able to perform the essential functions of his assistant manager position at all relevant times." ECF No. 1 at ¶ 19. This is nothing more than a conclusory assertion, and even at that it fails to aver that performance of these functions fulfilled his employer's legitimate expectations at the time of discharge. Plaintiff fails to allege facts identifying his duties, how he performed these duties, and how his performance met his employer's expectations. Without facts of this nature, the Court is left to speculate whether Plaintiff's termination was discriminatory or for a legitimate, non-discriminatory reason. Similarly, absent any allegation that Plaintiff was performing his job satisfactorily, the circumstances of his discharge do not raise a reasonable inference of unlawful discrimination. Plaintiff alleged that he was fired after protesting his manager's conduct in accusing him in front of customers of removing a credit card receipt without investigating the accusation. Plaintiff concludes that the reason for his termination was because of his real or perceived disability. However, Plaintiff has failed to assert sufficient facts to support this conclusion. Plaintiff links the manager's March 2 comment about Plaintiff's leg to his decision on March 6 to believe Plaintiff removed a credit card receipt and therefore wrongfully terminate

him because of his drop foot. This a speculative leap that simply does not "nudge[ Plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. There may be any number of plausible explanations for why Sanders terminated Plaintiff's employment so abruptly, but it is not the Court's role to supply the factual underpinnings for Plaintiff's claim that the real reason was unlawful discrimination. *Iqbal*, 556 U.S. at 662 ("[T]o survive a motion to dismiss, the complaint must 'state[ ] a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'"). Absent a proffer of facts which support the proposition that Plaintiff was meeting his employer's expectations, and that the manager considered Plaintiff's physical condition when deciding to terminate him, Plaintiff has failed to state a plausible claim.

As a result, the undersigned **RECOMMENDS** that the Court find Plaintiff has failed to state a claim for wrongful termination under the ADA. However, there may be facts which would support a claim which simply were not pled, and which if asserted may flesh out Plaintiff's wrongful termination claim, nudging it across the line from possible to plausible, and therefore the undersigned also **RECOMMENDS** that Plaintiff be given leave to amend his complaint as to this claim.

C.   **Title VII Claim**

To state a valid wrongful termination claim under Title VII, a Plaintiff must establish (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)). As the Fourth Circuit noted in *Coleman*, "while a plaintiff is not required to plead facts that constitute a prima facie case in order to

survive a motion to dismiss, *see Swierkiewiccz v. Sorema, N.A.*, 534 U.S. 506, 510-15, 122 S.Ct. 992, 152 L.Ed.2d 929 (2002), '[f]actul allegations must be enough to raise a right to relief above the speculative level,'" (citation omitted). 626 F.3d at 190. Here, Plaintiff has failed to assert facts sufficient to raise a plausible inference that the reason for his termination was his race. Other than identifying himself as African American and the server and manager as white, Plaintiff asserts no other facts about race in the complaint. The fact that an African-American was discharged from employment by a white decision-maker does not, standing alone, state a claim under Title VII. While not required to plead facts constituting a prima facie case, Plaintiff is required to plead facts allowing the Court to draw the plausible inference that race was a motivating factor behind the employer's discharge decision. Plaintiff has alleged no facts in his Complaint which would permit this claim to rise above the speculative level. Much as the court found in Coleman, "although [the] complaint conclusorily alleges that [Plaintiff] was terminated based on his race, it does not assert facts establishing the plausibility of that allegation." *Id.* at 190-91.

Plaintiff argued that his claim is plausible because Sanders made a "snap decision" to terminate Plaintiff without investigating the accusation of a white co-worker that Plaintiff had removed a credit card receipt from a table, and that Sanders spoke to him in a demeaning fashion. ECF No. 12 at 9-10. This argument is without merit. Making "snap decisions" does not suggest that racial animus is afoot, and Plaintiff can point to no case where such an allegation has been found sufficient to raise an inference that such decisions are racially motivated. Moreover, directing someone to "carry your ass" to the back, ECF No. 1 at ¶ 25, and telling them "how about this, I'm firing your ass, how do you like that?" *id.* at ¶ 26, similarly does not raise an inference of racial discrimination, and Plaintiff has pointed to no authority that suggests

12

otherwise. Coarse or rude behavior in the workplace does not plausibly support the proposition that such behavior is racially motivated. Plaintiff also makes the logical fallacy that he was subject to disparate treatment because Sanders believed the white co-worker instead of him with respect to the credit card receipt. Disparate treatment in a wrongful termination case means a plaintiff was treated less favorably, in this case terminated from employment, for an occurrence where a non-minority employee was not. *Lawrence v. Global Linguist Solutions, LLC*, No. 1:13-cv-1207, 2013 WL 6729266, at *4 (E.D. Va. Dec. 19, 2013) (finding that although "[p]laintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim," they must show the comparator is "similar in all relevant respects" to them if their allegations are based "completely upon a comparison to an employee from a non-protected class"). To be a true comparator, the co-worker would have had to have been accused of removing a credit card receipt, or engaged in some other similar conduct, and not have been terminated. Plaintiff makes no such factual allegations here.

As a result, the undersigned **RECOMMENDS** that the Court find that Plaintiff has failed to state a claim for wrongful termination under Title VII. However, unlike with respect to Plaintiff's claim under the ADA, Plaintiff has not alleged any facts which might even possibly suggest that his termination was due to his race, let alone a plausible claim. Therefore, the undersigned **RECOMMENDS** that Plaintiff not be given leave to amend his Title VII claim.

D.  **Intentional Infliction of Emotional Distress**

In his memorandum opposing Defendant's motion to dismiss, Plaintiff withdrew his intentional infliction of emotional distress claim. Therefore, the undersigned **RECOMMENDS** that this claim be dismissed without leave to amend.

### E. Defamation *Per Se*

Plaintiff has asserted a defamation *per se* claim based on Sanders' statement to Plaintiff in front of restaurant customers about removing the credit card receipt. Specifically, Plaintiff alleged the following in the Complaint: On March 6, 2016, a white female server told Sanders she thought Plaintiff may have taken a credit card receipt from the table, which he had not done. ECF No. 1 at ¶ 23. "Mr. Sanders immediately sided with the white female server and accused Plaintiff of removing the receipt ..." *Id.* at ¶ 24. "Mr. Sanders made this accusation against Plaintiff in front of restaurant customers and other employees in the dining area ..." *Id.* Further, still in front of customers in the dining area, Sanders "loudly told Plaintiff to 'carry your ass to the back.'" *Id.* The exact words uttered by Sanders, other than the command to "carry [his] ass to the back" were not alleged in the Complaint.

To recover for defamation *per se* under Virginia law a plaintiff must allege that Defendant published false information concerning the plaintiff that tended to defame the plaintiff's reputation. *Hatfill v. New York Times Co.*, 416 F.3d 320, 330 (4th Cir. 2005). As relevant here, statements that impute to a plaintiff the commission of a crime involving moral turpitude, that impute unfitness to perform the duties of employment or a lack of integrity in his employment, or that prejudice a person in his profession or trade, are actionable as defamation *per se*. *Id.* Plaintiff has alleged that Sanders "accused Plaintiff of removing the receipt" in front of restaurant customers. Defendant argued that Sanders' comment, which was not specifically quoted, "neither states nor implies anything untoward to a general audience," ECF No. 11 at 20-21, relying on *Hatfield's* holding that "'the meaning of the alleged defamatory language cannot, by innuendo, be extended beyond its ordinary and common acceptation. The province of the innuendo is to show how the words used are defamatory, and how they relate to the plaintiff, but

14

it cannot introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain.'" 416 F.3d at 330 (quoting *Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588 (Va. 1954)). Consequently, Defendant contended that the implication Plaintiff attaches to Sanders' statement—that Plaintiff was accused of either theft, unfitness, lack of integrity, or prejudiced Plaintiff in his restaurant management profession—is not supported by the ordinary meaning of Sanders' words. ECF No. 11 at 21.

Plaintiff argued that Sanders' statement publicly "'accused' Plaintiff of taking a document associated with a credit card transaction" supporting the plausible inference that "restaurant customers, seeing an employee publicly accused (not asked discreetly, but accused publicly) of taking a credit card receipt would naturally believe that the alleged taking was a very important matter and that the receipt had been taken inappropriately out of incompetence on the part of the employee or as part of a criminal endeavor to commit credit card fraud." ECF No. 12 at 13. Plaintiff further argued that Sanders' loud order to Plaintiff to "carry [his] ass to the back" bolsters the negative implications the customers would infer from the exchange. *Id.*

The Court notes first that Plaintiff has not alleged the specific words uttered by Sanders during this confrontation. Of course, to survive a 12(b)(6) motion, a plaintiff need not plead the alleged defamatory comment's exact words. *See, e.g. Santos v. Christian*, No. 3:15cv476, 2015 WL 7738353, at *4 (E.D. Va. Nov. 30, 2015); *Mann v. Heckler & Koch Def., Inc.*, No. 3:15cv476, 2008 WL 4551105 at *7-8 (E.D. Va. Oct. 7, 2008); *Harrington v. Sprint Nextel Corp.*, No. 1:08cv336, 2008 WL 2228524, at *5 (E.D. Va. May 29, 2008). "[A] defamation complaint must only provide a 'short and plain' statement of the claim that is sufficient to give the defendant fair notice of the nature of the claim and the grounds upon which it rests." *Southprint, Inc. v. H3, Inc.*, 208 Fed.Appx. 249, 254 n.2 (4th Cir. 2006). However, a plaintiff

15

must allege facts which assert a plausible claim that defendant's statement was defamatory.

Interestingly, Plaintiff did not allege that Sanders accused him of stealing, or of taking the receipt for his own purposes, or of any other nefarious purpose. Instead, Plaintiff alleged that Sanders "accused Plaintiff of removing the receipt." ECF No. 1 at ¶ 24. Further, Plaintiff alleged that this comment was instigated by a co-worker's statement to Sanders that "she thought Plaintiff may have taken a credit card receipt from a table." *Id.* at ¶ 23. Plaintiff did not aver any facts to support the potential inference that he was being accused of a crime. For instance, Plaintiff did not aver that the credit card receipt contained credit card numbers, such that it may have had some value to someone who intended to commit credit card fraud. Alternatively, Plaintiff alleged no facts suggesting that the receipt was the merchant's copy of the receipt, necessary to somehow process the purchase, thereby permitting the inference that removing the receipt may have prevented the restaurant from collecting the charges. Simply stated, Plaintiff failed to allege facts which would have permitted the inference that the credit card receipt had any value, such that a public statement accusing Plaintiff of "removing" it might be considered an accusation of criminal conduct.

Inasmuch as Plaintiff did not use Sanders' precise words in his complaint, and instead made vague assertions about the context of what transpired, the Court is left to speculate about too much to determine whether Plaintiff has asserted a plausible claim for defamation *per se*. He failed to allege facts demonstrating what "removing" the receipt even meant. Did Sanders accuse him of pocketing the receipt? Throwing it away? Giving it to the wrong person? Without asserting what actually transpired, the Court is left with innuendo. To the extent Plaintiff contended that Sanders' statement imputed to Plaintiff an unfitness for his job or a lack of integrity, he failed to allege facts which would permit the plausible inference how this was so.

For instance, the Court notes again Plaintiff failed to allege that the receipt had any value, such that "removing" it was a serious matter constituting misconduct. He failed to allege facts supporting his conclusion as to how being accused of "removing" a receipt prejudiced him in the restaurant manager profession. Again, Plaintiff quite clearly did not allege that Sanders accused him of stealing. Instead, he asks the Court to infer that Sanders' comment implies that this is what Sanders accused Plaintiff of. While this may be possible, without more facts regarding the importance of the receipt, the context of what happened, or by quoting Sanders' words directly, Plaintiff's claim of defamation *per se* is simply too speculative.

As a result, the undersigned **RECOMMENDS** that the Court find Plaintiff has failed to state a claim for defamation *per se*. However, there may be facts which would support a claim which simply were not pled, and which if asserted may flesh out Plaintiff's defamation claim, nudging it across the line from possible to plausible, and therefore the undersigned also **RECOMMENDS** that Plaintiff be given leave to amend his complaint as to this count.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss, ECF No. 10, be **GRANTED**, that Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE**, and that Plaintiff be granted leave to amend Counts 1[2] and 5.

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C)

---

[2] As discussed *supra*, Counts 1 and 2 are not separate claims so should be asserted in an amended complaint as one claim with two alternate bases alleging how Plaintiff is a qualified individual with a disability.

and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The Chief United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 22, 2016